# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER J. JOHNSON, individually
and on behalf of all others similarly
situated,

              Plaintiff,

v.

SYNCHRONY BANK
170 WEST ELECTION ROAD, SUITE 125
DRAPER, UTAH 84020

&

OKLAHOMA FMS, INC.
4915 SOUTH UNION AVENUE
TULSA, OK 74107

&

MRS BPO, L.L.C.
1930 OLNEY AVENUE
CHERRY HILL, NJ 08003

&

NATIONWIDE CREDIT, INC.
500 VIRGINIA DRIVE, SUITE 514B
FT. WASHINGTON, PA 19034

              Defendants.

Case No.

Jury Trial Demanded

## CLASS ACTION COMPLAINT

Plaintiff, Christopher J. Johnson, through his attorneys, Galanis, Pollack, Jacobs & Johnson, S.C.,

on behalf of himself and all others similarly situated, and for his Complaint against Defendants,

Synchrony Bank, MRS BPO, L.L.C., Oklahoma FMS, Inc., and Nationwide Credit, Inc. states as follows:

### INTRODUCTION

1.    This class action seeks redress for collection practices that violate the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

1

2. This class action seeks redress for collection practices that violate the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA").

3. This class action seeks redress for collection practices that violate the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 *et seq.* (the "TCPA").

4. This class action seeks redress for collection practices that violate the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (the "TILA").

5. This class action seeks redress for collection practices that violate the Fair Credit Billing Act, 47 U.S.C. § 227 *et seq.* (the "FCBA").

6. This class action seeks redress for collection practices that violate the Wisconsin Consumer Act, when Chs. 421-427, Wis. Stats. are applicable (the "WCA").

## JURISDICTION AND VENUE

7. Pursuant to 28 U.S.C. 1331, this Court has original subject matter jurisdiction by reason of federal question jurisdiction.

8. Pursuant to 28 U.S.C. 1367, this Court has supplemental jurisdiction over the State law claims asserted herein.

9. Pursuant to 15 U.S.C. § 1692k, this Court has jurisdiction to grant the relief sought by Plaintiff.

10. Venue is proper in this Court under 28 U.S.C. 1391 in that a substantial part of the events or omissions giving rise to the claims herein occurred in this Eastern District of Wisconsin.

## PARTIES

11. Plaintiff, Christopher J. Johnson is an adult individual who resides in the Eastern District of Wisconsin (Milwaukee County).

12. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes, specifically, an alleged credit card debt.

13. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer credit transaction.

14. Defendant Synchrony Bank ("Synchrony") is a national bank with its primary place of business located at 170 West Election Road, Suite 125, Draper, Utah 84020.

15. Synchrony is a "person" as defined in 15 U.S.C. § 1681a(b); and a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

16. Synchrony does substantial business in Wisconsin.

17. Synchrony issues and services "Chevron and Texaco" and numerous other "branded" or "private label" credit cards around the world, including in Wisconsin.

18. Defendant Oklahoma FMS, Inc. ("Oklahoma") is a debt collection agency with its principal place of business located at 4915 South Union Avenue, Tulsa, Oklahoma 74107, and with Wisconsin registered agent Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53711.

19. Oklahoma is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

20. Oklahoma is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

21. Oklahoma is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

22. Defendant MRS BPO, LLC ("MRS") is a debt collection agency with its principal place of business located at 1930 Olney Ave., Cherry Hill, New Jersey 08003, and with Wisconsin registered agent Cogency Global Inc. c/o Dane County Title Company, Inc., 901 South Whitney Way, Madison, Wisconsin 53711.

23. MRS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

3

24.     MRS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

25.     MRS is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

26.     Defendant Nationwide Credit, Inc. ("Nationwide") is a debt collection agency with its principal place of business located at 500 Virginia Drive, Suite 514B, Ft. Washington, Pennsylvania, 19034 and with Wisconsin registered agent C T Corporation System, 301 S. Bedford St., Suite 1, Madison, Wisconsin 53703.

27.     Nationwide is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

28.     Nationwide is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

29.     Nationwide is a "debt collector" as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

30.     On its face, the WCA's regulation of debt collectors applies without distinction to creditors collecting on their own behalf, to creditors who hire other debt collectors to collect on the creditor's behalf, and to third-party debt collectors acting on behalf of creditors. *See* Wis. Stat. § 427.103(3)

31.     Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

32.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

33.     Synchrony is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself, both directly and indirectly through collection agencies.

4

34.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

35.     The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

36.     Synchrony uses third-party debt collection agencies, including the third-party debt collection agency named as a co-defendant in this case, to collect consumer debts. Synchrony, directly or indirectly, is a debt collector under this arrangement. Wis. Stat. § 427.103(3).

37.     Any company meeting the definition of a "debt collector" (here, Synchrony) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace*, LLP, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

38.     At no time did Plaintiff ever enter into a contract or any business relationship with Synchrony for a Chevron and Texaco Visa credit card.

39.     In January 2019, Plaintiff first learned of the alleged debt owed to Synchrony for a Chevron and Texaco Visa credit card by a "Chris Johnson" (hereinafter "the alleged debt").

40.     In January 2019, Plaintiff filed a dispute of the alleged debt with the various credit bureaus, thereby putting Synchrony on notice that Plaintiff disputed the collection action as the debt was not incurred by Plaintiff, and they were pursuing the wrong person.

5

41.     At some point unknown to Plaintiff, Synchrony used the co-defendants, Oklahoma and MRS as third-party debt collection agencies to collect the Plaintiff's alleged debt.

42.     On or around October 28, 2019, Plaintiff received a letter from Oklahoma demanding payment of the alleged debt on behalf Synchrony in the amount of $52,743.23. A copy of the letter is attached as Exhibit A.

43.     Exhibit A contains the following:

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEROF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEROF, THIS OFFICE WILL OBTAIN VERFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUREST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

44.     On or around November 13, 2019, Plaintiff sent to Oklahoma a Request for Verification of Debt, a copy of which is attached as Exhibit B. Plaintiff did not receive a timely response from Oklahoma and assumed the matter at end.

45.     On or around January 14, 2020, Plaintiff received a letter from Oklahoma dated December 27, 2019, attached hereto as Exhibit C. The letter did not contain the contract allegedly entered into, the credit application, nor the documentation supporting the alleged debt.

46.     Exhibit C contains utterly random invoices without dates or to whom and where these invoices were sent. The invoices indicate that some payments were made on that account which were not made by Plaintiff.

47.     The account numbers referenced in Exhibit C are inconsistent demonstrating a complete lack of due diligence in violation of state and federal law.

48.     On or around April 6, 2020, Plaintiff received a letter from MRS demanding payment of the alleged debt on behalf Synchrony in the amount of $52,743.23. A copy of the letter is attached as

6

Exhibit D. The letter did not contain the contract allegedly entered into nor the documentation supporting the alleged debt.

49. Beginning in or around January 2020, Plaintiff has received debt collection phone calls believed to be from MRS regarding the alleged debt that is the subject of this lawsuit.

50. On or around April 29, 2020, Plaintiff sent to MRS a renewed Request for Verification of Debt, and demand that the Synchrony and MRS take all measures necessary to delete the derogatory information and cease the alleged debt be removed from Plaintiff's credit report. A copy of said letter is attached as Exhibit E. Plaintiff did not receive a timely response from MRS.

51. On or about December 11, 2020, Plaintiff received a letter from Nationwide demanding payment of the alleged debt on behalf Synchrony in the amount of $52,743.23. A copy of the letter is attached as Exhibit F. The letter did not contain the contract allegedly entered into nor the documentation supporting the alleged debt.

52. On or around January 12, 2021, Plaintiff sent to Nationwide a Request for Verification of Debt, and demand that the Synchrony and Nationwide take all measures necessary to delete the derogatory information and cease the alleged debt be removed from Plaintiff's credit report. A copy of said letter is attached as Exhibit G.

53. Defendants did not conduct an investigation, contact Plaintiff, contact third-parties, or review underlying account information with respect to the disputed information and the accuracy of the alleged debt.

54. As of the date of this complaint, the Plaintiff has received numerous negative notations and delinquent accounts notices on various credits reports related to the alleged debt that is the subject of this lawsuit.

55. Upon information and belief, Synchrony failed to instruct various credit reporting companies to remove false information regarding the disputed information and the accuracy of the alleged debt.

7

56.     That upon information and belief, the issues subject to this lawsuit stem from a failure to adequately train employees.

57.     That upon information and belief, the defendants conduct outlines an egregious pattern of harassing conduct in violation of state and federal law.

## COUNT I
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 ET SEQ.
## AS TO ALL DEFENDANTS

58.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

59.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

60.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It

8

is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

61.    Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker*, 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa.1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

62.    15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

63.    15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

64.    15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

65.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

66.    15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

67.    15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

68.    15 U.S.C. § 1692g(a) states:

**a) Notice of debt; contents**

9

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

69.     Plaintiff, and those situated does not owe any defendant any amount of money.

70.     Plaintiff, and those situated did not make any credit card charges as alleged.

71.     Plaintiff, and those situated did not make any payments to any defendant.

72.     Defendants misrepresented the "character, amount or legal status" of the debt – namely, ownership of the alleged debt. 15 U.S.C. § 1692e(2)(a).

73.     Defendants violated 15 U.S.C. §§ 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692g(a).

74.     Plaintiff is therefore entitled to actual damages, statutory damages, and punitive damages in an amount not to be determined at trial. Plaintiff is also entitled to reasonable attorneys' fees and expenses.

## COUNT II
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ. AS TO SYNCHRONY BANK AND ANY OTHER DEFENDANT CREDIT REPORTING

75.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76.     Consumer credit plays a major role in the American marketplace and economic system. Fair and accurate credit reporting affects the lives of Americans consumers in many ways every day, and acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing, rentals, and a broad range of other transactions. National Consumer Law Center, The Practice of Consumer Law (2d ed. 2006), pp. 39-40.Congress has investigated and determined that the banking system is also dependent upon fair and accurate credit reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

77.     The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

78.     The FCRA initially arose in 1968 as a proposed amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing incidence of cases in which a consumer "is unjustly denied credit because of faults or incomplete information in a credit report," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. National Consumer Law Center, Fair Credit Reporting (5th ed. 2002), p. 8, citing 114 Cong. Rec. 24904 (Aug. 2, 1968) (emphasis added).

79.     Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information, and incomplete information. Fair Credit Reporting at 10, citing 115 Cong. Rec. 2411 (Jan. 31, 1969).

80.     Inaccurate and misleading information was called the most serious problem in the credit reporting industry. *Id.*

81.     The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation personal characteristics, or mode of living" is collected. Fair Credit Reporting at 5, citing 15 U.S.C. § 1681a(d).

11

82.     An inaccurate or misleading credit report can therefore not only significantly and unfairly lower a consumer's credit worthiness, but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole. The FCRA was put in place to prevent this arbitrary and iniquitous result.

83.     Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "Responsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003, but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. (Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

84.     The Defendants, whether one or more violated 15 U.S.C. §§ 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of Defendants' representations; by failing to review all relevant information regarding Plaintiff's disputes; by failing to accurately respond to credit reporting agencies; by verifying false information; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of Defendants' representations to consumer credit reporting agencies, among other unlawful conduct, and failing to update and/or remove the inaccurate tradeline or, in the alternative, to report the account as "disputed".

85.     As a result of the Defendants violations of the FCRA, Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to his credit rating, emotional distress, embarrassment, mental anguish, anxiety, and humiliation in an amount to be determined at trial.

86.     The Defendants conduct, actions, and inactions were willful, rendering them liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

87.     Alternatively, the Defendants' violations were negligent, rendering them liable for damages under § 1681o.

88.     Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT III
## TELEPHONE CONSUMER PROTECTION ACT OF 1991,
### 47 U.S.C. § 227 ET SEQ.
### AS TO ALL DEFENDANTS

89.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

90.     The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA."

91.     In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

> Id. at § 12;

92.     Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13.

13

93.     At no time did Plaintiff ever enter into a business relationship with Defendants.

94.     Beginning sometime on or about January 2020, Defendants initiated numerous telephone calls to Plaintiff's cellular telephone number ending in "414-807-0981."

95.     Each of these telephone communications constituted debt collection.

96.     Defendants calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

97.     Defendants did not have prior written express consent to call Plaintiff's cellular telephone.

98.     Plaintiff affirms that Defendants failed to validate that the Defendants were owed a debt.

99.     Plaintiff has been harassed and damaged as a result of the Defendants willful violations of the TCPA.

100.     On information and belief, Plaintiff believes that Defendants used an "automatic telephone dialing system" (or "ATDS"), as defined by 47 U.S.C. § 227(a)(1) to repeatedly call Plaintiff because Plaintiff was greeted by "dead air" prior to speaking with Defendants.

101.     This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

102.     These telephone communications by Defendant, or its agent, violated 47 U.S.C. § 227(b)(1).

103.     Through the aforementioned conduct, Defendant has violated 47 U.S.C. § 227 et seq.

104.     As a result of Defendants negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

105.     Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

14

106. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

107. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## COUNT IV
## TRUTH IN LENDING ACT,
## 15 U.S.C. § 1601 ET SEQ.
## AS TO ALL DEFENDANTS

108. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

109. TILA is a federal law designed to protect consumer in credit transactions by requiring clear disclosure of key terms of the lending agreement and all costs. The statute is contained in title I of the Consumer Credit Protection Act, as amended 15 U.S.C. §§ 1601 *et seq*. The regulations implementing the statute, which are known as "Regulation Z" are codified at 12 C.FR. § 1026. The purpose of TILA is to promote the informed use of consumer credit by requiring disclosures about its terms and cost.

110. Creditors are required to provide a consumer with a document, which includes the requisite TILA disclosures.

111. Defendants failed to deliver all material disclosures required by the TILA and Regulation Z in that the Defendants failed to properly and accurately disclose the requirements in violation of Regulation Z § 1026.5 and 15 U.S.C. § 1637.

112. Plaintiff is therefore entitled to actual damages, statutory damages, and punitive damages in an amount not to be determined at trial. Plaintiff is also entitled to reasonable attorneys' fees and expenses.

15

## COUNT V
## FAIR CREDIT BILLING ACT,
## 47 U.S.C. § 227 ET SEQ.
## AS TO ALL DEFENDANTS

113.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

114.     The FCBA provides an avenue through which cardholders may challenge perceived billing errors appearing on credit card account statements, as well as procedures that creditors must follow in properly responding to billing error allegations.

115.     If, within sixty days after having sent a cardholder an account statement, the creditor receives a written notice from the cardholder indicating her belief that the statement contains a billing error, the amount of the error, and the reason for believing there is an error, the creditor must make corrections in the account or investigate and explain why the account is correct prior to taking any action to collect the amount.

116.     The procedural requirements of Section 1666 of the FCBA provide that if proper notice of a billing error is provided by the borrower, a creditor must: (1) send a written acknowledgement of the notice within thirty days; (2) investigate the matter; and (3) either correct the debtor's account or give a written explanation of the disputed billing error within ninety days. *See* 15 U.S.C. § 1666(a).

117.     Based on the FCBA's forfeiture clause, 15 U.S.C. § 1666(e), "[a]ny creditor who fails to comply with the requirements of this section…forfeits any right to collect from the obligor the amount [in dispute], and any finance charges thereon, except that the amount required to be forfeited under this subsection may not exceed $50." 15 U.S.C. § 1666(e).

118.     Accordingly, Defendants' unlawful conduct, actions, and omissions—in violation of the FCBA and its regulatory counterpart—has caused Plaintiff to suffer actual damages and financial and pecuniary harm arising from monetary losses relating to Defendant's FCBA and Regulation Z violations, as well as out-of-pocket expenses including, but not limited to, economic damages and damage to

reputation, in addition to emotional distress, expenditure of time and resources, annoyance, aggravation, and frustration.

119.     Plaintiff gave Defendants written notice of the dispute.

120.     Defendants violated the FCBA and Regulation Z by the following conduct, acts or omissions, including but not limited to:

a.  Failing to make a reasonable attempt to investigate Plaintiff's claims involving the fraudulent credit card after receiving Plaintiff's billing error notices, in violation of 15 U.S.C. § 1666(a)(3)(B) and 12 C.F.R. § 226.13(c)(2);

b.  Failing to furnish copies of documentary evidence of Plaintiff's alleged indebtedness, as requested by the Plaintiff, in violation of 15 U.S.C. § 1666(a)(3)(B)(ii) and 12 C.F.R. § 226.13(f)(2);

c.  Failing to reasonably investigate Plaintiff's billing error dispute involving the fraudulent credit card, and to provide Plaintiff with the written results of its investigation thereof within the statutory timeframe allotted, in violation of 15 U.S.C. § 1666(a)(3)(B) and 12 C.F.R. § 226.13(c)(2); and

d.  Imposing and charging Plaintiff with greater limits of liability for the subject fraudulent transactions than authorized or permitted by 15 U.S.C. § 1666(e).

121.     Plaintiff is therefore entitled to actual damages, statutory damages, and punitive damages in an amount not to be determined at trial. Plaintiff is also entitled to reasonable attorneys' fees and expenses.

**COUNT VI**
**THE WISCOSNIN CONSUMER ACT,**
**CH. 421-427, WIS. STATS.**
**AS TO ALL DEFENDANTS**

122.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

17

123. The WCA was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

124. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett v. Community Credit Plan, Inc.*, 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

125. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

126. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

127. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

128. The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

129. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

18

130.    Wis. Stat. § 427.104(c) states that a debt collector may not: "Disclose . . . information adversely affecting the customer's reputation for credit worthiness with knowledge or reason to know that the information is false."

131.    Wis. Stat. § 427.104(f) states that a debt collector may not: "Disclose . . . information concerning the existence of a debt known to be reasonably disputed by the customer without disclosing the fact that the customer disputes the debt."

132.    Wis. Stat. § 427.104 (1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

133.    Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . .."

134.    Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

135.    Plaintiff has complied with Wisconsin Statutory disclosure requirement when the WCA is applicable to the underlying transactions.

136.    Defendants violated Wis. Stat. §§ 427.104(c), 427.104(f), 427.104 (1)(g), 427.104(1)(h), and 427.104(1)(j).

137.    Plaintiff is therefore entitled to actual damages, statutory damages, and punitive damages in an amount not to be determined at trial. Plaintiff is also entitled to reasonable attorneys' fees and expenses.


## PUNITIVE DAMAGES

138.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

139.    The defendants assigned the debt of another person to the plaintiff and those situated like the plaintiff, without adequate basis to transfer the debt, with improper training and investigation.

140.     After written notice of the same, the defendants failed to remedy the false debt reporting and continue to report the debt as delinquent in the named plaintiff.

141.     Plaintiff is entitled to punitive damages from the defendants in an amount to be determined at trial. That punitive damages are appropriate pursuant to the facts of this case as necessary to curtail similar actions in the future.

142.     Plaintiff is also entitled to reasonable attorneys' fees and expenses.

## CLASS ALLEGATIONS

143.     Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent collection letters and account statements in the form represented by Exhibits A, Exhibit C, and Exhibit D to the complaint in this action, (c) or received automated collection phone calls (c) attempting to collect a debt owed to Synchrony or alleged to be owed to Synchrony, (d) between February 27, 2019 to present, (e) that was not returned by the postal service (f) after previously exercising the right to request debt verification, (g) and did not conduct an investigation, contact alleged debtor, contact third-parties, or review underlying account information with respect to the disputed information and the accuracy of the alleged debt based on the account having been operated greater than one year with a verifiable payment history.

144.     The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

145.     There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA, the FCRA, the TCPA, TILA, the FCBA, and the WCA.

146.     Plaintiff's claims are typical of the claims of the members of the Class. All are based on the same factual and legal theories.

20

147. Plaintiff will fairly and adequately represent the interests of the members of the Class.

Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

148. A class action is superior to other alternative methods of adjudicating this dispute.

Individual cases are not economically feasible.

## JURY DEMAND

149. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

    (a)    actual damages;

    (b)    statutory damages;

    (c)    injunctive relief;

    (d)    Punitive damages

    (e)    attorney's fees, litigation expenses and costs of suit; and

    (f)    such other or further relief as the Court deems proper.

Dated this 9th day of July, 2021.
    GALANIS, POLLACK JACOBS & JOHNSON S.C.
    Attorneys for Plaintiff

    Joshua J. Brady
    State Bar No. 1041428
    Zachary L. Enstrom
    State Bar No. 1102478

P.O. Address:
839 N. Jefferson St., Suite 200
Milwaukee, WI 53202
(414)271-9556
jbrady@gpjlaw.com
zenstrom@gpjlaw.com

21